719 A.2d 178 (1998)
315 N.J. Super. 511
Suzanne DORFMAN (a/k/a Suzanne Polikoff), Plaintiff-Respondent,
v.
Jeffrey DORFMAN, Defendant-Appellant.
Suzanne DORFMAN (a/k/a Suzanne Polikoff), Plaintiff-Appellant,
v.
Jeffery DORFMAN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1998.
Decided October 23, 1998.
J. Patrick McShane, III, Cherry Hill, argued the cause for appellant-respondent Jeffrey *179 Dorfman (Forkin, McShane, Manos & Rotz, attorneys, Mr. McShane, on the brief).
Eric S. Spevak, Cherry Hill, argued the cause for respondent-appellant Suzanne Dorfman, a/k/a Suzanne Polikoff (Adinolfi and Spevak, attorneys, Mr. Spevak and Sandra Yampell, on the brief).
Before Judges WALLACE, NEWMAN and FALL.
The opinion of the court was delivered by: FALL, J.S.C., (temporarily assigned).
In this consolidated matrimonial matter, both parties appeal an order denying their post-judgment motions. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.
The parties, both accountants, were married in 1988, separated in 1994, and divorced on February 8, 1995, the final judgment incorporating their detailed property settlement agreement. They have two minor children, Jared and Jason, now eight years old and seven years old, respectively. Custody and parenting-time issues were resolved in accordance with a mediated agreement dated November 14, 1994, incorporated into the property settlement agreement. The mediated agreement provided for a joint custody arrangement with defendant having the following parenting-time:
Mr. Dorfman will have the children Thursday to Sunday P.M. one week. The next week he will have them two days overnightprobably, Wednesday and Thursday and the pattern will repeat thereafter.
The schedule will be reviewed every two months to account for special events or changes.
During tax season the children will be returned to their mother on Saturday morning and be picked up Saturday evening on the days Mr. Dorfman has them from Thursday to Sunday.
In addition, major holidays were to be alternated, summer parenting time was provided for, and various information was to be exchanged.
Defendant's weekly support obligation was agreed to be $310 in basic child support; an additional $140 towards the extraordinary expenses of the children such as day care and summer camps; and alimony of $150 for three years, terminating November 30, 1997. This aggregate $600 weekly support obligation was based on the actual $1,227 net weekly income of defendant and the imputed $431 net weekly income of plaintiff. On March 8, 1997, plaintiff remarried and defendant's weekly support obligation automatically reduced to $450. The property settlement agreement contemplates reduction of the weekly $140 extraordinary needs component of support when each child reaches first grade. However, it also provides that Hebrew School costs of the children will be an open issue in the second grade and thereafter. Defendant also agreed to be responsible for 74% of the uninsured health care expenses of the children.
In September 1996 defendant was terminated from his seventeen-year employment with an accounting firm, in which he had a small partnership interest. He also had a small equity interest in the property housing the accounting firm. Defendant secured employment with another accounting firm in October 1996 at a reduced gross annual salary of $60,000. His average gross earnings over the prior five years was approximately $100,000. After discussions with plaintiff, but without her express consent, defendant reduced the $140 weekly extraordinary expenses component of support to $71, reducing his overall weekly payments to $381.
On July 16, 1997 defendant filed a motion, based on changed financial circumstances, to reduce his aggregate support obligation; to reduce his percentage responsibility for unreimbursed health care expenses of the children; to determine he has no responsibility for the costs of Hebrew School; and to receive parenting-time credits under the revised child support guidelines. See R. 5:6A. Plaintiff opposed the motion and filed a cross-motion, seeking discovery of defendant's financial circumstances; payment and enforcement of the full support obligation in *180 the property settlement agreement, with payments through the applicable probation department; contribution towards the Hebrew School expenses; modification of the parenting-time schedule; and counsel fees and costs.
The motion judge denied defendant's application for support and health care expense modification, finding he failed to demonstrate a substantial change of circumstances; required defendant to continue paying the weekly sum of $71 as his extraordinary expenses contribution, inclusive of his obligation towards the Hebrew School costs; denied plaintiff's request for modification of the parenting-time schedule, finding no substantial change in circumstances; and required defendant to pay plaintiff $375 for Jason's counseling. The balance of requested relief was either denied, withdrawn, or mooted by these rulings.

II.
When considering an application to modify support, the moving party has the burden to make a prima facie showing of changed circumstances warranting relief prior to the court ordering discovery of the full financial circumstances of each party. Lepis v. Lepis, 83 N.J. 139, 157-59, 416 A.2d 45 (1980). If that showing is made, and after receipt of ordered discovery, the judge then determines whether the changed circumstances justify modification. A plenary hearing may be necessary to adjudicate the matter if there are genuine issues of material fact. Tancredi v. Tancredi, 101 N.J.Super. 259, 262, 244 A.2d 139 (App.Div.1968). Here, the parties engaged in an exchange of significant financial information prior to argument on the motions, including tax returns, paystubs, case information statements, and other documentation. In denying modification, the motion judge stated
I find that there is no substantial change in circumstance. He has earned between $90,000 and $120,000 in the past 5 years. According to the guidelines there can be an imputation of income at this point, and that would be about $100,000 a year, and I'm doing that. Even with his loss of car allowance and insurance provided by his former firm, his circumstances have not changed because he has less support to pay. His original support obligation, alimony and child support have decreased 37 percent, and his income has decreased 38 percent. There's also money due from his partnership buy out, and with all of that I find under the totality of the circumstances, I don't find that you've proven to me that there is a substantial change in circumstances.
The flaw in imputing an annual gross income of $100,000 to defendant is the lack of a finding by the motion judge that defendant was, without just cause, voluntarily underemployed. Such a finding is requisite, before considering imputation of income. See Bencivenga v. Bencivenga, 254 N.J.Super. 328, 331-32, 603 A.2d 531 (App.Div.1992); Deegan v. Deegan, 254 N.J.Super. 350, 355, 603 A.2d 542 (App.Div.1992); Lynn v. Lynn, 165 N.J.Super. 328, 340-41, 398 A.2d 141 (App.Div.1979); Mowery v. Mowery, 38 N.J.Super. 92, 102-05, 118 A.2d 49 (App.Div.1955); Gertcher v. Gertcher, 262 N.J.Super. 176, 178, 620 A.2d 454 (Ch.Div.1992); Thomas v. Thomas, 248 N.J.Super. 33, 35, 589 A.2d 1372 (Ch.Div.1991); and Arribi v. Arribi, 186 N.J.Super. 116, 118, 451 A.2d 969 (Ch.Div.1982). Underpinning the basis of every support order is the proposition the payor has the "ability to pay" the amount set, or agreed to. Inherent in a finding of "underemployment" is the notion the obligor is intentionally failing to earn that which he or she is capable of earning. Appendix IX-A to R. 5:6A, "Considerations in the Use of Child Support Guidelines", gives recognition to these principles:
12. Imputing Income to Parents. The fairness of a child support award resulting from application of these guidelines is dependent on the accurate determination of a parent's net income. If the court finds that either parent is, without just cause, voluntarily underemployed or unemployed, it shall impute income to that parent according to the following priorities: ...
[Pressler, Current N.J. Court Rules, Appendix IX-A, "Considerations in the Use of Child Support Guidelines" (1998).] *181 Additionally, this section provides specific rules for imputation of income and factors to consider.
All the information then before the court leads to the conclusion he was not underemployed. Defendant was involuntarily terminated from his employment of the seventeen preceding years in September 1996. There was nothing in the record to suggest his termination was induced by misconduct, or that it was voluntary. He immediately sent out resumes, followed through with telephone calls, and arranged for interviews. He received one offer in the $40,0000 range and eventually accepted employment at the $60,000 per annum rate in October 1996. This was a significant salary reduction, clearly constituting changed circumstances. Defendant also lost the benefit of employer-supplied automobile expenses allowance, health insurance, and life and disability insurance. He was able to defer filing his modification motion until July 1997, because he received a termination benefit, and had reduced his weekly contribution to the extraordinary expenses of the children from $140 to $71.
Accordingly, we reverse denial of defendant's motion to modify his child support obligation, and remand the matter for additional discovery, consideration of the financial circumstances of both parties, and computation of his child support obligation in accordance with the child support guidelines. This includes considering the appropriateness of ordering and allocating the extraordinary expenses of the children, such as work-related child care, summer camps, and Hebrew School costs. See R. 5:6A and Pressler, Current N.J. Court Rules, Appendix IX-A, "Considerations in the Use of Child Support Guidelines" (1998).

III.
In her cross-motion, plaintiff sought a review, with possible modification, of the parenting schedule. In May 1997, plaintiff was informed by Jason's teacher he was having behavioral difficulties in school. As a result, the child was referred to a counselor who concluded Jason's behavior was related to the numerous transitions between the two households, recommending they be minimized. This problem was detailed and documented by plaintiff in her moving certifications. Defendant opposed the application, contending there was no linkage shown between the child's problems and the frequency or quantum of his parenting-time. In denying plaintiff's application, the motion judge stated:
With regard to the issue of modification, I'm not satisfied and I agree with Mr. McShane here. I'm not satisfied that you've shown to me a substantial change of circumstances warranting a modification of the visitation schedule. The schedule, the motion for modification is denied.
This conclusory language is insufficient under R. 1:7-4(a), requiring findings of fact and reasons given for conclusions reached. There was substantial evidence before the judge demonstrating the child was experiencing significant behavioral problems. Plaintiff certified these problems were related to the frequency of the parenting time transitions. A licensed social worker, and child and adolescent counselor, provided a report reaching the same conclusion. This information warranted court intervention, to at least order an investigation of the problem, its cause, and to pose meaningful solutions to serve the best interests of the child. Sending the parties back to the mediation program, where they originally resolved their differences, was an appropriate suggestion by plaintiff.
The denial of plaintiff's application to review the parenting arrangement is reversed, and the matter remanded for further proceedings consistent with this opinion.

IV.
There were various requests for discovery that were either denied, withdrawn, or mooted by the rulings in the October 9, 1997 order. In light of this decision, on remand those requests should now be reconsidered. The ruling requiring defendant to pay plaintiff $375 for Jason's counseling is supported by the record, and is affirmed.
*182 Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.