774 A.2d 581 (2001)
340 N.J. Super. 312
Debra FOUST, Plaintiff-Appellant,
v.
Craig GLASER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 24, 2001.
Decided May 8, 2001.
*582 Appellant filed a pro se brief.
Respondent filed a pro se brief.
Before Judges PRESSLER, KESTIN and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
Plaintiff appeals from a March 1, 2000, order denying reconsideration of an order directing her to pay $41 per week toward college tuition expenses as child support for the son of her marriage to defendant. We reverse.
The background is as follows. The parties were married in 1977 and divorced in 1984. They had one child, their son Dustin, born February 16, 1980, custody of whom was awarded to defendant, Craig Glaser, with visitation rights to plaintiff, Debra Foust. The judgment of divorce provided that defendant "does not seek child support from the Plaintiff at the present time but reserves the right to apply for support."
Defendant filed a motion for child support more than fourteen years later, on December 9, 1998, seeking to compel plaintiff to contribute to the expenses of college tuition for Dustin, who had started his college education at Stockton State in September 1998. The hearing officer recommended that plaintiff pay $9.00 per week, based upon an imputation of minimum *583 wage earnings to plaintiff. Because defendant was unwilling to accept that amount, the matter was referred to a judge. The judge also imputed minimum wage earnings to plaintiff and directed that she contribute $41 per week to the college expenses, effective immediately. Plaintiff sought modification of the support order on May 7, 1999, on the alleged basis of physical injuries sustained in an automobile accident. She then withdrew the motion, but in late 1999 she filed another motion to modify the support order, which a judge denied on January 5, 2000. This appeal is from a March 1, 2000, order which denied plaintiff's most recent motion to modify the child support payments.
When the court established the figure of $41 per week as plaintiff's child support obligation, it apparently was aware that plaintiff had past drug problems, had been fired from numerous jobs due to "attitude" problems and "difficult[y] with authority" and that her recent jobs had been minimum wage. She had been unemployed from 1997 through at least March 1, 2000. She married Chris Foust in December 1998 but he left her in June 1999. Three months earlier, in March 1999, plaintiff was involved in a serious motor vehicle accident. Starting in October 1999, she began receiving Social Security disability payments of $573 per month, and that amount was raised to $587 per month in early 2000. Social Security did not consider Dustin to be plaintiff's dependent in computing the benefits it has paid plaintiff.[1]
Plaintiff's difficulties have been compounded by a psychiatric disability in addition to the physical injury resulting from the automobile accident. As of early 2000, she was on antidepressant medication. At the time of the March 1, 2000, hearing, plaintiff testified that she paid her heating bill with her disability check and was eating meals with her relatives, and that her mother was paying her phone bill. Her monthly mortgage payment is about $630.26, and inasmuch as her monthly disability check amounts to only $573 she has evidently had some financial help in paying the mortgage. She has asserted that she pays $400 of the mortgage, with the rest contributed by Chris Foust.
The trial court has substantial discretion in making a child support award. See Pascale v. Pascale, 140 N.J. 583, 594, 660 A.2d 485 (1995). If consistent with the law, such an award "will not be disturbed unless it is `manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Raynor v. Raynor, 319 N.J.Super. 591, 605, 726 A.2d 280 (App.Div.1999). The standard of review "is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence ..." in the record. Cesare v. Cesare, 154 N.J. 394, 411-412, 713 A.2d 390 (1998).
Notwithstanding the deference we owe to trial court determinations in these matters, we are compelled to reverse the award of child support against plaintiff because we are not satisfied that it comports with governing legal standards. For example, nothing appears in the record to indicate that either party has appropriately focused on the applicable factors set forth in Newburgh v. Arrigo, 88 N.J. 529, 545, 443 A.2d 1031 (1982). Indeed, at the outset of this child support dispute one judge noted the parties' failure to focus on the Newburgh factors. Defendant has not *584 followed through on the court's observations about the failure to address the Newburgh factors, despite the many subsequent appearances before hearing officers and other judges.
Plaintiff's requests for modification of the child support obligation required consideration of whether "changed circumstances had substantially impaired the [spouse's] ability to support himself or herself." Lepis v. Lepis, 83 N.J. 139, 157, 416 A.2d 45 (1980). Determining the impact and magnitude of "changed circumstances" necessarily entails knowing the starting point before the change, that is, the point from which the change can be measured. In this instance, an appropriate consideration of the Newburgh factors was essential to fixing the starting point of plaintiff's child support obligations and thus of her circumstances before the alleged change. Because that consideration did not occur, this evidentiary lacuna renders it impossible to know with reasonable accuracy the starting point for measuring an alleged change in circumstances. We consider unreliable by definition a Lepis determination made without accurately knowing the true point of beginning. Lepis does not presuppose an arbitrary or false starting point.[2]
We note, moreover, that unlike what is perhaps the typical Lepis scenario, plaintiff does not base her changed circumstances argument on a change in actual income. Rather, she argues that changed circumstances exist due to a change in her earning capacity, thus affecting how much income should be imputed to her. Ordinarily, the imputation of income depends on a finding that a party is "without just cause, voluntarily unemployed." Dorfman v. Dorfman, 315 N.J.Super. 511, 516, 719 A.2d 178 (App.Div.1998); see generally Considerations in the Use of Child Support Guidelines, in Current N.J. Court Rules, Appendix IX-A at 2184 (2001) ("Imputing Income to Parents"). Failure to adequately consider evidence as to changed circumstances has been deemed reversible error. Dorfman v. Dorfman, supra, 315 N.J.Super. at 517, 719 A.2d 178. Finally, we note Judge Fall's apt observation in Connell v. Connell, 313 N.J.Super. 426, 430, 712 A.2d 1266 (App.Div.1998):
Children are also entitled to share in the good fortune of their parents to meet their needs in accordance with the lifestyle of their parents. Italiano v. Rudkin (Italiano), 294 N.J.Super. 502, 506, 683 A.2d 854 (App.Div.1996); Walton v. Visgil, 248 N.J.Super. 642, 649-650, 591 A.2d 1018 (App.Div.1991); Zazzo v. Zazzo, 245 N.J.Super. 124, 130, 584 A.2d 281 (App.Div.1990), certif. denied, 126 N.J. 321, 598 A.2d 881 (1991).
We have no doubt that the converse proposition generally applies to an equal extent.
*585 Indeed, in our view it is implicit in a number of the factors in Newburgh, supra, 88 N.J. at 545, 443 A.2d 1031, such as "the financial resources of both parents," that an adult child desirous of pursuing higher education is not necessarily immunized from the ill fortune of a parent whose lifestyle involuntarily has come to preclude an ability meaningfully to contribute financial support.
We are thus satisfied that the present record establishes that, as of the time of the order appealed from, factors under Newburgh, supra, remained to be sufficiently addressed. Defendant had the opportunity to make an appropriate showing in light of those factors and failed to do so. Plainly, then, there is not an adequate basis in the record to conclude that plaintiff has the duty or ability to pay. As a result, we are unable to sustain the order appealed from and are satisfied that it must be reversed. Moreover, because of a failure to focus on the Newburgh factors, which one judge flagged from the very start of the proceedings that eventually led to the instant awards by other judges, and because we contemplate that a full consideration of these factors in light of Lepis and Dorfman, supra, should have been undertaken, we are satisfied that vacating the award to defendant against plaintiff of $41 per week retroactive to its inception is appropriate.
The order appealed from is reversed.
NOTES
[1] We note, however, that although on disability, plaintiff has made substantial purchases, apparently with borrowed money, including a dog and a used pick-up truck, and she has re-tiled the bathroom floor of her home.
[2] We mean no criticism of the trial judges and hearing officers who have labored over the course of several hearings during these child support proceedings to handle the issues in dispute. In contrast to our vantage point, they have had to deal with the parties on a largely piecemeal, ad hoc basis, presumably under severe time constraints. They have not had the benefit our somewhat more distant perspective affords, such as the ability to study the entire course of the proceedings, to have transcripts available, and to have at least a modest amount of time for reflection. If a plaintiff and defendant neglect to inform judges or hearing officers that a judge at a previous stage of the proceedings has taken a certain position on the record, such as, for example, with respect to the Newburgh factors, we do not fault the adjudicators for remaining unaware of what the parties have not revealed. The difficulty is, of course, that, even if the judges and hearing officers have not been informed that the parties have already been directed to deal with such issues, this information is not rendered any less important, and our need to intervene is not diminished to any degree, by the parties' failure to impart the necessary information.