**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1825-18T4

JOANN DALY,

    Plaintiff-Respondent,

v.

PETER DALY,

    Defendant-Appellant.

_____

          Submitted October 5, 2020 – Decided December 1, 2020

          Before Judges Rothstadt and Susswein.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0073-15.

          Previte Nachlinger, PC, attorneys for appellant (Michael J. Evans, on the briefs).

          Kalman Harris Geist, attorney for respondent.

PER CURIAM

    In this dissolution matter, defendant Peter Daly appeals from portions of the Family Part's August 29, 2018 Final Judgment of Divorce (JOD) and its

December 7, 2018 order denying defendant's motion for reconsideration. On appeal, defendant challenges the trial judge's alimony and child support award to plaintiff Joann Daly, k/n/a Joann DePinto, as well as certain aspects of the judge's decision relating to equitable distribution, and the judge's denial of his motion for a Mallamo credit.[1]

We have considered defendant's contentions in light of the record and the applicable principles of law. We affirm almost all of the provisions of the JOD, substantially for the reasons stated by the trial judge in her comprehensive and thoughtful oral decision placed on the record on August 28 and August 29, 2018.[2] However, we are constrained to remand one aspect of the judgment as it related to an asset that the judge determined was subject to equitable distribution.

## I.

The parties were married in 1994 and they had one child, a son who was born in 1999. Throughout the marriage, defendant, a certified public accountant, was the primary wage-earner earning an average of approximately $178,000 per

---

[1] Mallamo v. Mallamo, 280 N.J. Super. 8, 12–17 (App. Div. 1995).

[2] The judge's decision was placed on the record on those two days and it spanned across approximately 140 transcript pages.

year, including bonuses, as a finance manager for a major telecommunications company. Plaintiff worked part-time as a claims examiner for an insurance agency, earning approximately $80,000 annually. The parties also had unearned income from investments.

During the marriage, the parties maintained an upper middle class lifestyle, which allowed them to, among other things, own a single family home and a rental property, exchange expensive gifts, take vacations outside of the country, and save for their son's college education. Defendant was primarily responsible for managing the family's financial matters and, beginning in approximately 2000, defendant also began managing his father's finances and received a number of financial gifts from his father intended to be advances on his inheritance, some of which were to be shared with his two brothers.

In June 2014, the parties' relationship ended under circumstances that for our purposes need not be discussed in this opinion. We only observe that those circumstances traumatized the parties' son, led to his estrangement from defendant as recommended by mental health professionals, and caused defendant to leave the marital home.

A-1825-18T4

Plaintiff filed her complaint in 2014, which she amended in 2016. Throughout the pendency of the matter, the parties engaged in contentious litigation, much of which involved issues relating to their son.

As to their finances, in May 2015, the trial judge entered an order for defendant to pay to plaintiff, pendente lite, $950 per week in unallocated support for plaintiff and their son, which was nontaxable to plaintiff. That order was amended on June 2, 2015, to allocate the weekly support payments to reflect $250 in child support and $700 in alimony, nontaxable to plaintiff. As part of his pendente lite support obligation, defendant was also required to maintain medical and life insurance coverage for the family and contribute $350 per month to their son's college savings account. In 2016, defendant's motion to reduce his support obligation was denied, but the college savings contributions requirement was suspended.

The trial was held over seven nonconsecutive days beginning in December 2017 and ending with the trial judge's entry of the JOD in August 2018. At trial, the parties testified in detail as to their income, assets, debts, and overall lifestyle. Defendant also testified about his handling of his father's finances and his receipt of gifts from his father, who passed away in 2016 during the pendency of this matter, and advances on his inheritance that he received during his

father's lifetime. The father's Last Will was never offered into evidence to support any of defendant's contentions about his father's estate, nor was it admitted to probate despite the fact his father passed away. In addition, defendant's brothers were never presented to corroborate his testimony about their father's estate.

Following trial, the judge rendered her thorough oral decision and then entered the comprehensive JOD incorporating her findings. In her decision, after reciting the facts, the judge placed her detailed credibility findings on the record and concluded that while plaintiff was more credible, with some exceptions, both parties were generally "credible in their testimony" and "sincere in their perceptions." However, the judge maintained she had "lingering uncertainties about the myriad of financial transactions that purportedly took place between [defendant] and his father," but for the most part did not believe that defendant dissipated marital assets.

The judge found that "the parties [were not] equal partners in the marriage," concluding that defendant was "the proverbial head of household . . . who managed the family's finances." Then, as to each issue that she needed to address regarding alimony, child support, college expenses, and equitable

distribution, the judge engaged in an exhaustive review of each of the applicable statutory factors before formulating her award.

As to alimony, after engaging in a detailed analysis of the parties' income and expenses, and determining their marital lifestyle, the judge found that $6900 per month was needed to maintain the marital lifestyle, but pursuant to plaintiff's request, the judge awarded plaintiff only $3125 per month open durational alimony, tax deductible to defendant and taxable to plaintiff. Defendant was also ordered to secure this obligation with life insurance in the amount of $400,000. As to child support, the judge awarded $290 per week, and that it be paid retroactive to September 1, 2017. She also ordered the parties to maintain $50,000 in insurance coverage to secure this obligation.

Addressing the son's college expenses, the judge similarly went through a detailed analysis of the child's needs and the factors set forth in Newburgh v. Arrigo, 88 N.J. 529, 544 (1982), and determined how those expenses should be paid by the parties. The judge found that the son had approximately $159,000 available for college through the parties' 529 accounts and approximately $40,000 in savings bonds. She directed that the savings bonds be used towards the son's contribution to his undergraduate costs at the rate of $5700 per year, after applying a scholarship he received, with the balance of the bonds to be left

6

available for graduate study. Of the remaining costs for undergraduate study, plaintiff was to be responsible for 48% and defendant was responsible for 52%.

As to equitable distribution, the judge identified and addressed each of the parties' assets and made findings as to whether they were part of the marital estate or exempt from distribution. A significant portion of the judge's decision addressed assets that defendant claimed were exempt from distribution.

In accordance with the parties' stipulation, the judge ordered that the marital home and the rental property be sold immediately, with the proceeds to be equally divided between the parties. She also distributed the marital portion of all retirement accounts equally divided between the parties. As to certain Hudson City Bank accounts, the judge found that defendant closed the account and kept the proceeds of $2370, and therefore ordered him to reimburse plaintiff $1185. Addressing a Valley National Bank account, the judge ordered defendant to reimburse plaintiff $3500, which was one half its balance.

Among the other assets addressed were the proceeds of a $61,473.48 check from 2008 payable to the parties and purportedly endorsed by them from an E-Trade account. Plaintiff denied that she ever saw the check before and testified that neither of the signatures to the endorsement was hers. Defendant remembered there had been an account but could not recall what happened to

the proceeds. The judge found it unusual that although defendant was highly detailed in his testimony about all other assets and financial matters generally, including the family's income and expenses, he could not recall what happened to the substantial check. The judge ordered defendant to reimburse plaintiff $30,736.74 as her share of the proceeds.

As to exempt assets, the judge found that funds at TD Bank had belonged to defendant's father and were exempt from equitable distribution. Similarly, she found a Bank of America account that ultimately became a Goldman Sachs account contained inheritance advances, and was also exempt because defendant "manifested an intention to keep this account separate and apart" and the small deposits of marital funds that were made into it did not alter the character of this account as an exempt account. However, she rejected defendant's contention that stocks in a Computershare account containing AT&T, Vodafone, Verizon, Teradata, and LSI Corp. stocks, were gifted from defendant's father because there was no proof where the stock came from or any evidence corroborating defendant's claim. The judge ordered that the stock account be divided equally between the parties.

The judge also denied defendant's request for a Mallamo adjustment to credit him for the value of the tax benefit he lost while paying pendente lite

support. According to the judge, it was appropriate for plaintiff to take the tax exemption for their son, as she was the parent of primary residence.

The judge also awarded credits to which she determined the parties were entitled, placing her reasons as to each on the record. Credits in plaintiff's favor related to one half the son's various living and educational expenses that plaintiff paid without reimbursement from defendant, and for the amount plaintiff paid to satisfy the mortgage that had encumbered the marital home. The judge rejected plaintiff's claims for $18,350 for reimbursement of property taxes paid and an alleged $9000 loan from her mother. The judge ordered defendant to reimburse plaintiff $2250 of the $4500 paid to an expert and $850 for a refund from their mediator.

Finally, the judge addressed the parties' claims for counsel fees and costs. Here too the judge reviewed each of the factors under Rule 5:5-3(c) and concluded that neither party acted in bad faith despite their claims to the contrary and, based on their financial positions, neither party was entitled to an award of fees or costs.

After the judge entered the JOD, defendant filed a motion for reconsideration on September 18, 2018, seeking the judge to exempt the stock account from equitable distribution, rescind the credit to plaintiff for the E-

Trade check, and award the Mallamo credit. Moreover, defendant sought a reconsideration of the judge's decision regarding credits for charges plaintiff made to a credit card for counsel fees and a vacation. The judge denied the motion on December 7, 2018, again placing her reasons on the record on that date. In her explanation, she concluded defendant failed to meet his burden on reconsideration, making numerous references to the evidence adduced at trial, or that which was never presented at trial, and to her specific findings as to each issue that she made in her original decision. This appeal followed.

## II.

### A.

We begin our review by acknowledging it is limited. Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016); Cesare v. Cesare, 154 N.J. 394, 411 (1998). We accord deference to Family Part judges due to their "special jurisdiction and expertise" in family law matters. Cesare, 154 N.J. at 413. We are bound by the judge's findings after a trial so long as they "are supported by adequate, substantial, credible evidence." Id. at 411–12. We will not disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent" with the evidence presented. Id. at 412. However, challenges to legal conclusions, as well as a trial judge's

interpretation of the law are subject to our de novo review. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382 (2010).

B.

With those guiding principles in mind, we first address defendant's challenge to the trial judge's alimony determinations. According to defendant, the judge failed to properly apply certain statutory factors under N.J.S.A. 2A:34-23(b). Specifically, he alleges that the judge erred in determining: plaintiff's actual need and the parties' ability to pay; the standard of living established in the marriage and the likelihood that each party can maintain a reasonable comparable standard of living; the parental responsibilities for the child; the equitable distribution ordered; and the income available to either party through investment of assets. We find these contentions to be without merit.

"A Family Part judge has broad discretion in setting an alimony award." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012). However, "the exercise of this discretion is not limitless[,]" and is "frame[d]" by the statutory factors set forth in N.J.S.A. 2A:34-23(b). Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004), aff'd as modified, 183 N.J. 290 (2005). We will not disturb an alimony award if the trial judge's conclusions are consistent with the law and not "manifestly unreasonable, arbitrary, or clearly contrary to reason or

11

to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 316 (App. Div. 2001). The question is whether the trial judge's factual findings are supported by "adequate, substantial, credible evidence" in the record and the judge's conclusions are in accordance with the governing principles. Ibid. Furthermore,

> [a] trial court's findings regarding alimony should not be vacated unless the court clearly abused its discretion, failed to consider all of the controlling legal principles, made mistaken findings, or reached a conclusion that could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole.
>
> [Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996).]

"[T]he goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." Crews v. Crews, 164 N.J. 11, 16 (2000). It is "critical" and "essential" to "[i]dentify[] the marital standard of living at the time of the original divorce decree . . . regardless of whether the original support award was entered as part of a consensual agreement or of a contested divorce judgment." Id. at 25.

As already noted, in awarding alimony, the judge must consider the thirteen factors enumerated in N.J.S.A. 2A:34-23(b), along with any other

factors deemed relevant.  <u>Heinl</u>, 287 N.J. Super. at 344.  Under the statute, the judge must articulate specific findings of fact and conclusions of law with respect to the alimony award.  N.J.S.A. 2A:34-23(b).

The statutory factors are:

> (1) The actual need and ability of the parties to pay;
>
> (2) The duration of the marriage or civil union;
>
> (3) The age, physical and emotional health of the parties;
>
> (4) The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other;
>
> (5) The earning capacities, educational levels, vocational skills, and employability of the parties;
>
> (6) The length of absence from the job market of the party seeking maintenance;
>
> (7) The parental responsibilities for the children;
>
> (8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;
>
> (9) The history of the financial or non-financial contributions to the marriage or civil union by each

party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

[Ibid.]

Here, the trial judge systematically and carefully addressed all of the applicable factors. The judge considered the parties' CISs, their testimony about lifestyle and financial matters, and all of the written evidence in finding that the parties' lifestyle was "upper middle class." The totality of the circumstances, as demonstrated by the record, supported this finding.

In determining plaintiff's need for spousal support, the trial judge rightly considered the wide variety of evidence in the record, including her CIS.

Plaintiff's trial testimony explained the purported bases for these amounts. The judge "extrapolated" the parties' son's expenses from plaintiff's needs "since they should not be included in plaintiff's post-divorce needs." The trial judge then weighed this information against defendant's CIS and testimony.

Evidence in the record, which established recent spending for the family as being approximately $12,420 per month reasonably supported the judge's conclusion that the budget for plaintiff alone was $11,327 per month, or $135,924 per year. The judge then appropriately fashioned an arrangement that would provide plaintiff with the support she required: Subtracting plaintiff's annual net salary from the total need left a shortage of $82,797 per year, or roughly $6900 per month. But plaintiff only requested $37,500 per year, or $3125 per month. The judge found that defendant was able to pay this amount, and thus reasonably granted plaintiff's request.

Contrary to defendant's contention on appeal that the judge erred in considering plaintiff's prospective housing cost, without recognizing that he too would have a similar expense, the judge recognized that "both [plaintiff] and [defendant] will have a housing expense that they did not have during the pendency of this divorce" in light of the anticipated sale of the parties' mortgage-free properties. The judge also considered defendant's testimony that he could

rent a suitable one-bedroom apartment for $1800 per month, and only allowed $2500 per month towards a new mortgage for plaintiff, which was less than her testified need of $3200 per month for that purpose. Significantly, the judge did not award the full amount that she calculated the plaintiff needed and limited the alimony award to that which plaintiff requested.

Similarly, defendant's other contention that the judge erred by including in plaintiff's expenses costs for the son despite his living away at college is belied by the fact that the judge repeatedly acknowledged that she adjusted plaintiff's award based on the son's living arrangement, explaining that she "extrapolated" his costs from plaintiff's requested budget. And, defendant's additional contention that the judge's opinion was "completely devoid" of any analysis of defendant's ability to maintain a reasonably comparable standard of living is equally without merit. The judge clearly was cognizant of defendant's needs. Again, she acknowledged that both parties would incur new housing expenses and specifically considered the assets available to defendant to use following equitable distribution. When determining that defendant was able to pay the $3125 monthly alimony award, she particularly focused on his income of approximately $200,000 per year, which included both earned and unearned income.

16

Defendant also argues that his son did not require the parental care contemplated by the statute because of his age. He argues that his son did not need childcare or transportation in the same manner as a young child would. However, the judge's decision clearly acknowledged the son's age and recognized the corresponding costs associated with his age. The judge's commentary throughout the opinion suggests that the award reflected her recognition of the child's age and needs.

Finally, defendant also argues that the alimony ordered did not account for the income produced by the stocks awarded in equitable distribution, and that the alimony award was based on earned income only. But the judge understood that the stocks would produce income, as such income was referenced and attributed to defendant in the alimony analysis. The judge simply stated that plaintiff did not have such assets or income available to her prior to equitable distribution, not afterward. And, as already described, the judge nonetheless awarded plaintiff less than half of her $6900 calculated need.

## C.

Next, we address defendant's challenge to the trial judge's equitable distribution of the parties' assets. The equitable distribution award is also left to the discretion of the trial judge and will not be disturbed on appeal "as long

as the trial [judge] could reasonably have reached [the] result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000) (citing Perkins v. Perkins, 159 N.J. Super. 243, 247–48 (App. Div. 1978)).

Under equitable distribution, the statutory factors enumerated in N.J.S.A. 2A:34-23.1, "used in concert with the facts of each case," inform the otherwise "broad discretion" accorded to the trial judge. Steneken, 367 N.J. Super. at 434–35. As a result, "[w]here the issue on appeal concerns which assets are available for distribution or the valuation of those assets, it is apparent that the standard of review is whether the trial judge's findings are supported by adequate credible evidence in the record." Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443–44 (App. Div. 1978). And, relatedly, when the issue involves the manner in which the trial court allocated the marital assets, the trial court's determination is subject to an abuse of discretion standard. Id. at 444.

(i).

Defendant argues that the judge erred in her equitable distribution determination by failing to accept his testimony as to the exempt assets and thus erred in including the Computershare account containing the stocks allegedly gifted from his father in equitable distribution. We disagree.

N.J.S.A. 2A:34-23.1 provides the statutory factors to be considered in determining equitable distribution. The goal of equitable distribution is a "fair and just division of marital assets." Steneken, 183 N.J. at 299. In determining the equitable distribution of marital assets, the trial judge applies a three-prong analysis. Rothman v. Rothman, 65 N.J. 219, 232 (1974). The judge must determine what assets are available for equitable distribution, value the distributable assets, and allocate the assets to the parties. Ibid.

Certain assets, including gifts and premarital assets, are exempt from equitable distribution. Painter v. Painter, 65 N.J. 196, 214 (1974). Such gifts may be included in equitable distribution where they are clearly commingled with marital assets. Wadlow v. Wadlow, 200 N.J. Super. 372, 380–81 (App. Div. 1985). The burden of establishing immunity of an asset from equitable distribution rests with the party asserting immunity. Weiss v. Weiss, 226 N.J. Super. 281, 291 (App. Div. 1988); Painter, 65 N.J. at 214.

Here, defendant bore the burden of proof to demonstrate that the stocks in the Computershare account were gifted from his father and thus exempt from equitable distribution. The only evidence of a gift at trial was defendant's testimony. There was no corroborative evidence, which had been provided as to the other assets allegedly gifted. The stock account statements did not reveal

the origins of these assets. The trial judge reasonably found defendant's testimony to lack credibility, particularly when compared to his detailed testimony regarding other assets. For example, in contrast to the lack of corroboration regarding the Computershare account, defendant provided detailed information as to the TD Bank and Goldman Sachs accounts and presented specific checks representing the deposit of funds into the cited accounts, with credible explanations as to the source, such as rental income, Medicare reimbursements, and annual gifts.

Nonetheless, defendant argues that the judge made "inconsistent credibility findings" by accepting his testimony as to the other assets purportedly gifted from his father, but not the Computershare stock account. However, the evidence in the record supports the judge's conclusion because the TD Bank account statements revealed deposits of checks payable to his father, as well as Medicare reimbursements. And, as to the Goldman Sachs account, the record revealed checks payable to defendant from his father with corresponding deposit slips. No such evidence sufficiently established the origins of the Computershare stock account, with the only real evidence as to its origins being defendant's testimony that it was gifted to him around 2012. After deeming such testimony to lack credibility, the judge reasonably concluded that defendant did

not meet his burden of proof to show this account was exempt.

(ii).

Defendant also challenges the trial judge's distribution of the E-Trade account that she found existed prior to the parties' separation. In distributing that asset, the judge relied upon the copy of the check from 2008, to which the judge gave minimal weight, and on defendant's testimony that the account existed but that he could not recall what happened to the funds on deposit.

On appeal, defendant argues that the copy of the check for $61,473.49 from the account should not have been entered into evidence, and that the judge erred in concluding that the value of this check should be included in equitable distribution because there was no evidence that he dissipated this asset. We find merit to his latter contention.

Dissipation of marital assets must be considered in equitable distribution. N.J.S.A. 2A:34-23.1(i). Generally, the distributable marital estate will include assets diverted by a spouse in contemplation of divorce. Vander Weert v. Vander Weert, 304 N.J. Super. 339, 349 (App. Div. 1997). "Intentional dissipation of marital assets by one spouse would constitute a 'fraud on [the] marital rights'" of the other spouse. Kothari v. Kothari, 255 N.J. Super. 500, 510 (App. Div. 1992) (quoting Monte v. Monte, 212 N.J. Super. 557, 567–68

21

(App. Div. 1986)).  The party alleging dissipation bears the burden of proof.

See Monte, 212 N.J. Super. at 567–68 (discussing the burden of proof where a

husband incurred debt as a result of dissipation).

The concept of dissipation "is a plastic one, suited to fit the demands of

the individual case."  Kothari, 255 N.J. Super. at 506.  In determining whether

a spouse has dissipated marital assets, trial judges should consider the following

factors:

> (1) the proximity of the expenditure to the parties'
> separation;
>
> (2) whether the expenditure was typical of
> expenditures made by the parties prior to the
> breakdown of the marriage;
>
> (3) whether the expenditure benefitted the "joint"
> marital enterprise or was for the benefit of one
> spouse to the exclusion of the other, and
>
> (4) the need for, and amount of, the expenditure.
>
> [Id. at 507 (quoting Lee R. Russ, Annotation,
> Spouse's Dissipation of Marital Assets Prior to
> the Divorce as a Factor in Divorce Court's
> Determination of Property Division, 41 A.L.R.
> 4th 416, 421 (1985)).]

"The question ultimately to be answered by a weighing of these

considerations is whether the assets were expended by one spouse with the intent

of diminishing the other spouse's share of the marital estate."  Ibid.

Here, in her distribution of the E-Trade check proceeds, the trial judge did not consider any of the Kothari factors, and instead awarded half of its value simply because the account once existed and there was no evidence that the proceeds were redeposited in marital accounts. The mere possible existence of an asset ten years before trial, without further evidence of its ownership and ultimate disposition, does not entitle plaintiff to a share of that account in equitable distribution. Under these circumstances, we are constrained to remand this issue to the trial judge for reconsideration under Kothari. By remanding, we do not suggest an outcome.

D.

We turn our attention to defendant's argument that the judge erred in failing to credit him under Mallamo for the overpayment of pendente lite support. According to defendant, he was entitled to the credit because his pendente lite support was not deductible by him as was his ultimate alimony obligation. We find no merit to this contention.

To be sure, "pendente lite support orders are subject to modification prior to entry of final judgment . . . ." Mallamo, 280 N.J. Super. at 12; see also Tannen v. Tannen, 416 N.J. Super. 248, 284 (App. Div. 2010). These adjustments are permitted in recognition of the temporary nature of pendente lite awards that are

23                                                                    A-1825-18T4

by their nature based upon limited information as compared to the information adduced at a trial. See Mallamo, 280 N.J. Super. at 16. Any changes in the initial orders rest with the trial judge's discretion. Jacobitti v. Jacobitti, 263 N.J. Super. 608, 617 (App. Div. 1993).

Here, although the trial judge initially denied an adjustment because defendant did not request the tax deduction earlier, she fairly determined that a Mallamo adjustment was not required because, contrary to defendant's assertion, the initial pendente lite award was too low. That award called for $700 per week in spousal support and $250 per week in child support. The judge's ultimate award, as described above and supported by the competent evidence in the record, was $3125 per month in alimony and $1160 per month in child support. Thus, any alleged "windfall" was offset by the underpayment in pendente lite support, which lasted for more than three years. On that basis, defendant was not entitled to the adjustment. We discern no abuse in the judge's discretion in this regard.

E.

(i).

Defendant next argues that the judge erred in using the child support guidelines to calculate child support because the guidelines were inapplicable as

the parties' son was residing at school. He also contends that the alimony award reflected increased expenses for his son and thus the child support amount should not have included such expenses and therefore was unsupported by the record. We disagree.

Child support awards and modifications are left to the sound discretion of the trial judge and we are limited to determining whether there was an abuse of discretion. Innes v. Innes, 117 N.J. 496, 504 (1990); Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999). "The trial [judge] has substantial discretion in making a child support award." Tannen, 416 N.J. Super. at 278. A child support determination will not be set aside unless shown to be unreasonable, unsupported by substantial evidence, or "'the result of whim or caprice.'" Ibid. (quoting Foust, 340 N.J. Super. at 315).

There was no dispute that the parties combined incomes exceed the Guideline's ceiling. Rule 5:6A provides that the Guidelines "shall be applied in an application to establish child support" and may only be modified for good cause shown. Where the family income exceeds $187,200, "the court shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income" together with the factors specified in N.J.S.A. 2A:34-23. Child Support Guidelines,

Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2017). See also Isaacson v. Isaacson, 348 N.J. Super. 560, 581 (App. Div. 2002) ("The maximum amount provided for in the guidelines should be 'supplemented' by an additional award determined through application of the statutory factors set forth in N.J.S.A. 2A:34-23(a).").

"When 'faced with the question of setting child support for college students living away from home,' however, the guidelines are inapplicable[,] and the court must determine support based on the factors set forth in N.J.S.A. 2A:34-23(a). . . . Reliance exclusively upon the guidelines in these situations constitutes reversible error." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 595–96 (App. Div. 2016) (citations omitted) (emphasis added) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 113 (App. Div. 2012)).

Under N.J.S.A. 2A:34-23(a), in determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a trial judge should consider the following factors:

> (1) Needs of the child;
>
> (2) Standard of living and economic circumstances of each parent;
>
> (3) All sources of income and assets of each parent;
>
> (4) Earning ability of each parent, including

A-1825-18T4

educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing childcare and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]

Here, as the trial judge recognized, "in such cases as this where the child is living away at college and 18 years of age the guidelines do not strictly apply and the court must, also, consider the factors enumerated in N.J.S.A. 2A:34-23(a)." The judge then went on to consider the statutory factors and calculated the child's needs during his time away from school as well as the fixed costs that continue even when he was not at home. The trial judge reduced the child support amount to reflect the time the son spent living away at college using fixed and variable expenses of the household and the child, and properly

supplemented that award for additional expenses such as gasoline for the child's car, car insurance, and the child's cell phone. Moreover, as already discussed, the judge reduced alimony which reflected the son's living situation and did not award the full amount of alimony plaintiff required. In doing so, the judge did not abuse her discretion as her decision was supported by the evidence and consistent with the controlling legal principles.

(ii).

Defendant also argues that the trial judge erred in not applying all of the child's savings bonds to his undergraduate costs but instead allocated some to his anticipated graduate school expenses as well. Specifically, he alleges that the judge's determination to withhold part of the bonds in the event the son attends graduate school violates N.J.S.A. 2A:17-56.67, and that the judge erred in speculating that the child would actually attend graduate school. He contends that the statute does not extend the obligation to fund educational programs beyond college. We disagree.

"In appropriate circumstances, parental responsibility includes the duty to assure children of a college and even of a postgraduate education," Newburgh, 88 N.J. at 544, even though the child would otherwise be emancipated under N.J.S.A. 2A:17-56.67. A trial judge determining whether a parent should

contribute to a child's higher education is required to consider the twelve factors set forth in <u>Newburgh</u>, which "the Legislature essentially approved . . . when amending the support statute, N.J.S.A. 2A:34-23(a)." <u>Gac v. Gac</u>, 186 N.J. 535, 543 (2006).

Here, in applying the <u>Newburgh</u> factors while rendering her decision, the trial judge observed that the parties acknowledged their son's plan to complete undergraduate studies and then pursue a graduate program in physical therapy. Under the fifth <u>Newburgh</u> factor, 88 N.J. at 545, the relationship of the requested contribution to the kind of school or course of study sought by the child, the judge found that the son planned to pursue a seven-year program in physical therapy, which could necessitate the use of his savings bonds for post graduate study. In her analysis of factor eight under <u>Newburgh</u>, the financial resources of the child, <u>ibid.</u>, the judge found that the son had approximately $159,000 available for college, which reflected bank accounts and approximately $40,000 worth of savings bonds. The judge ruled that the savings bonds would be used towards the son's contribution to college costs in the amount of $5700 per year, with the balance to be left available for his anticipated graduate study.

As to <u>Newburgh</u> factor twelve, the relationship of the education requested with prior training and the long range goals of the child, <u>ibid.</u>, the judge found

that given the son's current major in biology, his aspirations to pursue graduate study in physical therapy was reasonable.  Based on these factors, the judge concluded that the parties' savings were "clearly intended to cover the son's post-secondary education" and the savings bonds in his name would be used as his own contribution to the cost of college and graduate school.

Here, the trial judge crafted a sensible plan for the son's education based upon the evidence presented at the trial.  Under that plan, the child's savings bonds would be available for his entire education, rather than just undergraduate study.  Clearly, the judge could have ordered, as defendant suggests, that all of the bonds be used for undergraduate studies, but then the parties would have to make up for those costs they would have covered for his anticipated graduate education.

Under these circumstances, we again do not discern any abuse of the judge's discretion.  We have no cause to disturb her thoughtful plan for the parties' child's education.

F.

We conclude that defendant's remaining arguments that we have not otherwise addressed, including that the trial judge's erred by refusing to reconsider her decision, except as to the E-Trade check, and about charges

30

plaintiff allegedly made to a certain credit card, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part; vacated and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1825-18T4