**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2553-22

CHRISTINE OSHIDAR,

    Plaintiff-Appellant,

v.

DARIUS OSHIDAR,

    Defendant-Respondent.

_____

Submitted May 14, 2024 – Decided August 7, 2024

Before Judges Smith and Perez Friscia.

On appeal from the Superior court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1029-12.

Fiore Law Group, attorneys for appellant (Fioravante Bucci, on the briefs).

Weinberg, Kaplan & Smith, PA, attorneys for respondent (Michael A. Weinberg, of counsel; Jill Dell'Aquilo, on the brief).

PER CURIAM

Plaintiff Christine Oshidar appeals from the Family Part's order granting, for the second time, defendant Darius Oshidar's post-judgment motion to reduce alimony following our 2021 remand. We conclude that the Family Part abused its discretion in granting defendant relief. We again reverse and remand for proceedings consistent with this opinion.

## I.

## A.

We incorporate the facts and procedural history from our opinion in Oshidar v. Oshidar, No. A-3994-19 (App. Div. October 26, 2021) (slip op. at 1-5). We briefly summarize the salient history.

Defendant, a self-employed dentist who owned and operated his own practice, sold that practice in 2014, approximately one year after his divorce. He continued to practice dentistry, but did so as an employee, rather than as a business owner. As a result of his shift in status from owner to employee, defendant's annual income dropped substantially. He then moved to reduce his alimony based on his new lower income. The motion judge denied his 2015 post-judgment motion to reduce alimony, finding defendant's change of circumstances was not continuous and substantial, but rather "that any present decrease in income [was] both temporary and voluntary." In 2016, defendant

started another owner-operated dental practice. He moved again in 2019 to reduce alimony, and after a plenary hearing in which plaintiff was self-represented, a different motion judge issued a March 20, 2020 order finding changed circumstances and granting defendant a reduction in alimony.

Plaintiff appealed. After examining the record in the context of the applicable law, we concluded the second motion judge mistakenly exercised his discretion by: not permitting plaintiff to cross-examine defendant on the issue of changed circumstances; making findings unsupported by the record; and, on some issues, failing to make findings at all. We stated:

> The record, including the trial court's January 2020 order, shows the court did not sufficiently explore the motivations, reasonableness, and good faith of defendant's career choices after the divorce. The court made no meaningful attempt to distinguish between the 2015 and the 2020 modification motions on these important issues, even though the 2015 motion was denied and the 2020 motion was granted.
>
> We conclude that the trial court's finding that defendant met his burden of proof as to changed circumstances was "manifestly unsupported" by the record. Though not an exact fit with "quitting a job," because defendant sold his business, and although he did not technically "change careers" because he remained a dentist, the changes in defendant's employment status in the years following the divorce fell within the range of what the trial court found to be a voluntary change in circumstances. Given its finding, the trial court was obligated to make further inquiry

3

into defendant's motivation, reasonableness and good faith while making those critical life decisions.

[Oshidar, slip op. at 9-10.]

We cautioned the trial court that it must complete the full analysis of Lepis's[1] first prong, as "[t]his preliminary inquiry was necessary to determine whether defendant truly met his burden by a preponderance of the credible evidence to show changed circumstances." Ibid. Only then should the court engage in a second prong analysis before determining if a reduction in alimony was justified. We made it clear that this particular fact pattern required a cogent analysis of the change of circumstances issue, concluding that "[w]ithout the steps outlined above, the trial court cannot support its judgment, and its decision represents a mistaken exercise of discretion." Ibid. (citation omitted).

B.

The same judge that issued the 2020 order handled the matter on remand. After a plenary hearing ostensibly centered on the remand issues, the judge issued an order dated March 16, 2023 granting defendant relief. In a ten-page written statement of reasons, the judge again found changed circumstances

---

[1] Lepis v. Lepis, 83 N.J. 139, 157 (1980).

warranting a reduction in defendant's alimony. We find it instructive to untangle the trial court's written decision.

The first four pages contain the judge's detailed findings in support of the reversed 2020 order. Starting on page six, the judge reviewed defendant's testimony at the remand hearing. Finding defendant credible, the judge wrote:

> Defendant testified in the first plenary hearing that he sold his dental practice, Quality Dental Care, in 2014 and received $96,300 gross per year from the sale from 2014 to 2019. Notwithstanding this payment and his income/gross economic benefit as a practicing dentist, [d]efendant was not able to meet his support obligations, which included college expenses. As a result, [d]efendant needed to deplete assets and accumulate debt to remain current on his obligations.
>
> As to the sale of Quality Dental Care in 2014, [d]efendant testified at the first plenary hearing that issues concerning the children were having a negative impact on his ability to properly manage the practice. Defendant testified that he felt alienated from the children at the hands of [p]laintiff. Defendant testified that a friend of his who was a dental practice consultant, pitched him the idea of stepping away from the management side of the practice and focusing on being a dentist. Defendant testified that he found the sale proposal to be a "very generous business offer" as far as what income he would derive moving forward.
>
> . . . .
>
> . . . Defendant concedes that his emotional struggles with [p]laintiff and the children were having an adverse effect on his ability to properly manage the

A-2553-22

practice. Defendant still feels that the offer he was made was a tremendous business opportunity that gave him a favorable compensation structure. Defendant learned quickly that the offer may have been too good to be true which led him to open his existing dental practice in 2016. Despite making this change, [d]efendant confirmed that he still needed to deplete his assets and accumulate debt to remain current on his support obligations.

Comparing defendant's testimony from the 2020 and 2023 hearings, the judge found that "the testimony offered by [d]efendant during the second plenary hearing provides [no] basis for the [c]ourt to change its findings/conclusions after hearing [d]efendant's testimony during the first plenary hearing." It stated:

> Given the totality of the circumstances that existed at that time, the [c]ourt finds that [d]efendant's decision to sell his practice was reasonable and done in good faith, motivated not only for personal/emotional reasons, but to ensure that he would continue to be in an economic position to remain current in his support obligations. The [c]ourt does not find that there has been any evidence presented to draw a conclusion that the business moves that [d]efendant made were designed to orchestrate a reduction of support.
>
> [(Emphasis added).]

The judge also found that defendant's decision to "deplete[] his assets and accumulate[] considerable debt to ensure that he remained current" on his obligations supported its finding of good faith. Finally, the judge drew an

inference of good faith from defendant's act of re-starting his own dental practice in 2016 after spending some time as an employee. The judge found defendant "properly established a showing of permanent and significant changed circumstances," and reinstated its May 22, 2020 order granting defendant relief.

On appeal, plaintiff contends that the motion judge erred because the record does not support a finding that defendant sold his practice in good faith. For the first time on appeal, plaintiff argues the judge exhibited bias towards her and that the court's conduct warrants reversal.

## II.

## A.

We summarize the familiar legal principles set forth at length in our initial decision, Oshidar, slip op. at 6-8. Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare, 154 N.J. at 413). The court's "findings are binding . . . so long as [its] determinations are 'supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare, 154 N.J. at 411-12). We will not disturb the factual findings and legal conclusions unless convinced they

7

are "so manifestly unsupported by or inconsistent" with the evidence presented. Cesare, at 412 (citation omitted). However, while "a family court's factual findings are entitled to considerable deference, we do not pay special deference to its interpretation of the law." Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016) (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

B.

"Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage.'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)) (internal quotation marks omitted). "Parties to a divorce action may enter into voluntary agreements governing the amount, terms, and duration of alimony" that "are subject to judicial supervision and enforcement." Ibid.

Our courts have equitable authority to revise and alter alimony awards "from time to time as circumstances may require." N.J.S.A. 2A:34-23. Support orders, including alimony and child support, are subject to continuous review and modification upon a showing of a substantial change in circumstances.

A-2553-22

<u>Lepis</u>, 83 N.J. at 157.[2]  Changed circumstances permitting a modification of alimony include "an increase or decrease in the income of the supporting or supported spouse."  <u>Quinn</u>, 225 N.J. at 49 (citations omitted).

In <u>Lepis</u>, the Supreme Court established a two-part analysis for evaluating whether a party's changed circumstances warrant modification to the initial support obligation.  <u>Id.</u> at 148.  Under this principle, the party moving for modification must first prove a prima facie case of changed circumstances.  <u>Id.</u> at 157.  If the moving party successfully clears that hurdle, then the court will analyze the financial effect of the change on each party's ability to sustain the standard of living established in the original dissolution proceeding.  <u>Id.</u> at 157-58.

This procedural standard governs all motions for support modification.  <u>See</u> <u>Crews</u>, 164 N.J. at 28-30 (reaffirming "the basic two-step changed-circumstances analysis" of <u>Lepis</u>).  If, after performing both steps, the court determines a modification of support is warranted, then the new amount is set

---

[2]  N.J.S.A. 2A:34-23 was amended in 2014 but did not supersede the basic "changed circumstances" requirement for support modifications.  <u>Landau v. Landau</u>, 461 N.J. Super. 107, 118-119 (App. Div. 2019) (2014 amendment to alimony statute did not alter procedural paradigm established in <u>Lepis</u>); <u>see also</u> <u>Mills v. Mills</u>, 447 N.J. Super. 78, 88-89, 95 (Ch. Div. 2016) (noting that right to modify alimony based on substantial change of circumstances continues to exist after 2014 amendment).

A-2553-22

according to the same criteria that governed the initial determination. Lepis, 83 N.J. at 157-58.

To show a prima facie case of changed circumstances, the movant's primary burden is to demonstrate that the change is both continuous and substantial. Id. at 157; see also Crews v. Crews, 164 N.J. 11, 28 (2000) (moving party must show that changed circumstances "substantially affect" ability to support themselves and recipient spouse). When a supporting spouse seeks a reduction in their support obligation based on their own diminished circumstances, the lone relevant consideration is the supporting spouse's financial situation. Crews, 164 N.J. at 30-32. The financial condition of the dependent party only becomes relevant after a prima facie case is made. Id. at 31.

The length of time that has passed since the order of support was entered is considered when determining whether a change is permanent. See Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006); Donnelly v. Donnelly, 405 N.J. Super. 117, 128 (App. Div. 2009) (affirming denial of motion filed nine months after entry of initial order because obligor failed to demonstrate a substantial and permanent change). A series of "incremental" changes, each insufficient by itself to warrant a modification of alimony, may collectively constitute a

sufficiently "substantial" prima facie showing.  See Beck v. Beck, 239 N.J. Super. 183, 190-191 (App. Div. 1990).

Generally, a reduction of income presents a prima facie case of changed circumstances.  See Jacoby v. Jacoby, 427 N.J. Super. 109, 118 (App. Div. 2012); but see Aronson v. Aronson, 245 N.J. Super. 354, 361 (App. Div. 1991) (concluding that a movant had failed to present a prima facie case of changed circumstances when he "allow[ed] his practice to continue to diminish unchecked while bemoaning his fate").

However, we recognize further analysis is necessary when the reduction of income claim is filed by a self-employed movant, Donnelly, 405 N.J. Super. at 130 & n.5, who may be "in a better position to present an unrealistic picture of his or her actual income," Larbig, 384 N.J. Super. at 23.  A voluntary change in circumstances requires further scrutiny beyond the financial details of the asserted change.  "[O]ther considerations come into play[,]" including the motivations, reasonableness, and good faith of the moving party.  Kuron v. Hamilton, 331 N.J. Super. at 570-72; see Deegan v. Deegan, 254 N.J. Super. 350, 355 (App. Div. 1992).

Voluntary reductions in income generally have been found not to be grounds for modification.  Courts have imputed an income level to the obligor

equal to their earning capacity less their current income.  See, e.g., <u>Bencivenga</u> <u>v. Bencivenga</u>, 254 N.J. Super. 328, 331 (App. Div. 1992); <u>Harris v. Harris</u>, 235 N.J. Super. 434, 441 (Ch. Div. 1989).  <u>See also</u> <u>Dorfman v. Dorfman</u>, 315 N.J. Super. 511, 516 (App. Div. 1998).  However, voluntary reductions in income do not preclude modification of support obligations.  <u>Kuron</u>, 331 N.J. Super at 570-72.  When such facts exist, the trial court should examine a variety of factors including the motivations, timing, and expectations of both parties, as well as the availability of other sources of payment.  <u>Id.</u> at 570-72 (citing <u>Deegan</u>, 254 N.J. Super. at 358-59).

Ultimately, a reduction in income may not always justify modification if the supporting spouse has other assets or resources for the necessary payments. <u>See Kuron</u>, 331 N.J. at 576.  In <u>Kuron</u>, we identified the criteria to consider:

> Facts concerning the motives, timing, and reasonableness of the payor's conduct should be evaluated . . . to determin[e] whether he or she has acted in good faith in the matrimonial matter . . . [or] whether the payor acted with the intent to reduce his or her support obligations, i.e., in bad faith . . . . Good faith in the context of changed circumstances is concerned less with the specific conduct that has led to the reduction in income and more with why the payor has adopted his or her course of action . . . . Yet, while a determination of good faith—or the absence of bad faith—would tend to weigh in favor of a finding of changed circumstances, it is not, by itself, dispositive either.  It is but one ingredient in determining whether the payor

12

can be deemed to have acted reasonably with regard to his or her support responsibilities.

[Id. at 571 (internal citations omitted).]

III.

A.

We first consider plaintiff's argument that the motion judge committed an abuse of discretion by finding changed circumstances. Plaintiff contends that such a finding was not supported by the record. We agree that the motion judge committed error, but for a different reason.

In his written statement of reasons, the judge found plaintiff presented no evidence from which a finder of fact could infer that defendant's business decisions were "designed to orchestrate a reduction of support." This finding is wholly unsupported in the record. On cross-examination, defendant admitted that gross revenue from his dental practice was $160,000 greater in 2013 than it was in 2012, the year of the parties' divorce. On re-direct, defendant testified that he won a federal government contract to provide dental services in 2013, which accounted for the increased business and revenue. Finally, defendant testified that he sold his practice on December 31, 2013, at the end of the year.

The motion judge ignored defendant's admissions and incorrectly stated that there were no facts which presented a genuine issue on the question of

13

defendant's good faith in selling his practice. The judge's failure to consider defendant's admissions and then incorporate those admissions into its good faith analysis on defendant's 2013 business sale was error.

That said, we express no opinion on how facts, including defendant's admissions, relevant to defendant's good faith in selling his practice should be weighed by a trial court performing a proper Lepis prima facie analysis. We simply note that such facts cannot be ignored. No meaningful prima facie analysis was attempted by the motion judge here, his conclusory statements on the subject notwithstanding. This along with the judge's failure to account for material facts gives us pause. When we consider the judge's ten-page citation-free opinion together with his disregard of material facts in the record, we conclude there is no rational explanation supplied by the court to support its order. See Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) ("An abuse of discretion arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." (citation and internal quotation marks omitted)).

### B.

Having addressed the dipositive issue, we turn to plaintiff's argument, not raised below, that the motion judge exhibited bias against her. We may "decline

to consider issues not properly presented to the trial court when an opportunity for such a presentation was available 'unless we find the issues raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Berardo v. City of Jersey City, 476 N.J. Super. 341, 344 (App. Div. 2023) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Because the argument was not raised below, and in light of the outcome here, we see no need to consider plaintiff's bias argument.

That said, the record clearly shows that the motion judge twice ignored a necessary step in the Lepis analysis. Both prongs of Lepis must receive equal attention. See R. 1:7-4. The record also shows the judge partially weighed evidence, expressed his opinions, "and may have a commitment to his findings." See Carmichael v. Bryan, 310 N.J. Super. 34, 49 (App. Div. 1998). Under these circumstances, we conclude the preferable course is to assign this matter to a different judge on remand. See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023); see also R. 1:12-1(d); Pressler and Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:12-1 (2024) (stating "the appellate court has the authority to direct that a different judge consider the matter on remand in order to preserve the appearance of a fair and unprejudiced hearing"). We again express no views regarding the outcome on remand.

Consequently, we direct the Assignment Judge to transfer this matter on remand to a different Family Part judge. On remand, the new judge shall conduct a case management conference within forty-five days of the issuance of this opinion, and in its sound discretion, schedule a plenary hearing, within ninety days, to address any outstanding Lepis first or second prong issues. Within forty-five days after completion of the plenary hearing the judge shall issue an order and decision applying both prongs of Lepis.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION